**SEALED  DOCUMENT**



## Affidavit Of Special Agent Kristin Rosenbeck

I, Kristin Rosenbeck, on oath depose and state that:

1.      I am a Special Agent with U.S. Immigration and Customs Enforcement ("ICE"),

and I have been employed with ICE and its predecessor agency, U.S. Customs Service, since June

1991.  I am currently assigned to the Drug Smuggling Group of the Boston Office.  Prior to this

position, I was assigned to the money laundering group in Boston.  Prior to that, I served for five

years as a Special Agent in Brownsville, Texas working on drug smuggling investigations.  Since

joining federal law enforcement in 1991, I have been involved in multiple drug-related

investigations involving the illegal smuggling of cocaine, heroin, marijuana, and other controlled

substances.  I have received extensive training in all aspects of drug smuggling and the techniques

used by persons to finance and import drugs.

2.      I make this affidavit based upon personal knowledge derived from my participation

in this investigation and upon information provided to me by other federal and local law

enforcement officers.

3.      This Affidavit is submitted in support of a criminal complaint charging SANDRA

SAUNDERS, LEON ROMPREY & RICHARD ADAMS with conspiracy to distribute, and to

possess with intent to distribute, marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C.

§ 841(a)(1).  This investigation is still ongoing.  Accordingly, I have not included each and every

fact known to me and to other agents working in this investigation.  Instead, I have included only

those facts which I believe are necessary to establish the existence of probable cause to support the

issuance of the criminal complaint.

### FACTS

4.      In October 2004, Special Agents assigned to ICE in Laredo, Texas, received



3

information that a marijuana distributor was looking for assistance in transporting a load of

Mexican-grown marijuana from Texas to Boston, MA. They learned that the distributor wanted a

tractor-trailer driver fluent in both English and Spanish languages and that the distributor would

meet the load in Boston, MA.

     5.     Law enforcement agents acting in an undercover capacity (UCA or UCAs) were

introduced to FELIX PARRA- GASTELOM and JOSE LUIS ARELLANO in October as truck

drivers, and they participated in multiple meetings with PARRA-GASTELOM and ARELLANO

in Texas to discuss the logistics and fees for transporting a large amount of smuggled marijuana to

Boston.

     6.     During the October 25, 2004 meeting, PARRA reported to the undercover agents, in

sum and substance, that they are constantly moving stuff. He noted that the marijuana is very

professionally packaged. He stated that there is no way to detect it, and that it does not smell. He

indicated that he uses a cover load to hide the true nature of the delivery. PARRA reported that he

usually deals in loads of 1000 to 1500 pounds. PARRA and the UCA discussed a price of $50,000

for the transportation. PARRA agreed to pay $10,000 before the pickup and the remainder at the

time of delivery.

     7.     On November 2, 2004, PARRA gave the undercover agents directions from Texas

to Boston and described in detail the hotel location near Boston (a TAGE INN) where the

undercover agents were to meet with PARRA. During this conversation, PARRA further

explained that he would not come close to the load or the restaurant location, but he will leave an

individual that will bring the UCA to the drop off location. ARELLANO told the UCA, in

substance, that he would wait for the call from the UCA when he arrived to pick up the container.

8.      On November 3, 2004, the undercover agents dropped off a trailer at a warehouse located at 1710 Markley Lane, Laredo, TX. ARELLANO indicated to an undercover agent that he controlled this warehouse. In substance, the UCA met with ARELLANO to pick up the container. ARELLANO told the UCA that the truck was ready and that he would give the UCA a call around 7:00 p.m. - 7:30pm.

9.      On November 4, 2004, the UCAs met with ARELLANO and PARRA at the warehouse location. At this meeting, PARRA gave $10,000 in U.S. currency to the UCAs. On November 5, 2004, the UCA picked up the trailer loaded with marijuana from the warehouse for transport to the Boston, MA, area. When the UCAs arrived at the warehouse location, the trailer was partially loaded with the cover load. ARELLANO operated a forklift to load the boxes containing the smuggled marijuana and continued to fill the trailer with the cover load.

10.     On November 7, 2004, the UCAs arrived in the Boston, MA, area. Law enforcement officers in Boston outfitted the tractor-trailer with a GPS transponder. The next day, on November 8, 2004, the UCAs, who were outfitted with an audio and visual transmitter allowing real-time monitoring and recording, drove the tractor trailer to the parking lot of the TAGE INN, located in Somerville, MA, as previously instructed by PARRA.

11.     On this same date, surveillance units witnessed a black Ford Taurus vehicle displaying license plate MA-US 62DV40 arrive in the vicinity of the Tage Inn. The agents observed a white male, later identified as William STANLEY, exit the front passenger side of the Taurus carrying a small, plastic bag in his hands. STANLEY walked to the rear of the Taurus where he appeared to be manipulating items in the trunk of the Taurus. STANLEY removed a black, plastic trash bag from the trunk. A photo of this activity revealed a box that appears to be a

box of Husky brand trash bags. A box of Husky brand contractor bags was later seized.

      12.     Surveillance units witnessed STANLEY walk across the street and get into the passenger's side of the cab of the tractor. STANLEY introduced himself to the UCAs as "Billy". STANLEY directed the UCAs to take 93 North to 128 South. The Taurus drove by the tractor-trailer and departed the area. The UCAs identified PARRA as the back seat passenger of the vehicle.. Upon departing the area, PARRA gave a "thumbs-up" hand signal to the UCA.

      13.     STANLEY provided directions to the UCA to go toward the offload location while making and receiving numerous calls on his cellular telephone. At approximately 11:07 a.m. on November 8, 2004, the tractor-trailer traveled on Esquire Road in Billerica, MA. STANLEY handed over $40,000 from the small plastic bag to the UCA and stated "that's your money."

      14.     At approximately 11:14 a.m., STANLEY directed the UCAs into the business location, identified as 239 Rangeway Road, Billerica, MA. This location houses a cement block warehouse. STANLEY stated to the UCAs that usually the driver leaves the container, the driver takes off and comes back later. STANLEY asked the UCAs how they wanted to do it, and one of the UCAs stated that they would wait for them to finish offloading.

      15.     Surveillance units then observed the tractor-trailer being unloaded. Several pallets of the cover load, used computer parts, were unloaded onto the ground outside of the warehouse. PARRA had previously instructed the UCA in recorded conversations to transport the cover load of used computer parts back to Laredo, TX, for re-use. A person identified to the undercover agents as "Ricky", later identified as RICHARD ADAMS, was present at the warehouse and was in charge of unloading the tractor trailer. He moved the computer parts out of the way, in order to get access to the marijuana load. ADAMS complained about the condition of the cover

4

load, and noted that usually the cover load was insulation, because nobody wants to climb in it. After a forklift arrived at the warehouse, ADAMS worked with STANLEY and another white male, later identified as John MANNING, to offload 4 large cardboard boxes on pallets, and one smaller box that was not on a pallet. During the offloading, the boxes were turned on their sides to reveal the bottom, upon which it became apparent that the cardboard was a sleeve, covering a steel box that was welded shut. MANNING took the boxes inside the warehouse with the forklift and directed ADAMS to start opening them. ADAMS came out of the trailer, and went around the building, while MANNING and STANLEY loaded the cover load back into the trailer.

16.     Just before two o'clock, ADAMS left the warehouse carrying a small black bag. He got into a small silver Volkswagon, Massachusetts Registry Number 69DM29, and left the property.

17.     At approximately 2:30 p.m., agents observed a maroon Ford F-150 XLT pickup truck pull into the warehouse. The bed of the pickup truck was empty when the truck arrived but left the warehouse with four Greenlee brand containers in the bed of the truck. The pickup truck was followed, and a search warrant was obtained for the containers, which revealed a total of 76 "bricks" of marijuana, wrapped in cellophane, greased and covered with coffee grounds. This agent is familiar with many methods that drug distributors and couriers use to conceal marijuana and other controlled substances, and it is a common practice to surround controlled substances with coffee in an attempt to conceal the odor.   The load field tested positive for marijuana.

18.     Shortly before 3:00 p.m., a white 1999 Ford Econoline van, Massachusetts Registration number US30RG, Vehicle Identification Number 1FTRE1420XHA06080, registered to SANDRA SAUNDERS, pulled up to the 239 Rangeway Road warehouse. WILLIAM STANLEY met the van at the warehouse, and helped load the van with large trash bags.

5

Surveillance agents saw STANLEY pass the bags into the van. The bags were opaque, but were observed to be filled to the top, and appeared to be heavy based on the manner in which STANLEY was handling the bags. Surveillance officers saw SANDRA SAUNDERS and LEON ROMPREY outside the van, with ROMPREY assisting in the loading of the van.

19.     The van left the warehouse a few minutes later, at approximately 3:00 p.m. Surveillance was maintained, and it was stopped by state police shortly after it left the warehouse. SANDRA SAUNDERS was driving the van, and LEON ROMPREY was a passenger. A strong odor of marijuana was detected from the driver's side window. The van was searched, and fourteen large trash bags were recovered from this vehicle. These bags were full of "bricks" of marijuana, similar in appearance to the bricks recovered from the containers in the pickup truck – tightly wrapped cellophane, greased and covered with coffee grounds. A total of 67 bricks, with a gross weight in excess of 500 pounds, were contained in the trash bags. The load field tested positive for marijuana.

20.     After the van departed the warehouse, agents maintained surveillance on the warehouse. No additional vehicles left the warehouse with loads. Agents secured the warehouse, and located the owner of the warehouse, who signed a written consent authorizing a search of the warehouse. Garbage bags, contractor size, similar in color and size to the bags which WILLIAM STANLEY was seen unloading from the trunk of the Ford Taurus and later loading into the white van, were strewn around the warehouse floor. A partially full box of unused bags was also in the warehouse. A search of the warehouse revealed five containers similar in size to the green containers seen on the pick up truck. Two of these containers were green, Greenlee brand, identical to the ones on the pickup truck, and three were yellow containers of a "Husky" brand. The yellow containers had locks on them which had coffee grinds on the locks. A search warrant

6

was obtained for the five containers, and upon search, they were found to contain marijuana, packaged in bricks like those located in both the pickup truck and the van. A total of 57 bricks was recovered from the warehouse in these five containers.

21.    The total gross weight of marijuana obtained from the containers in the pickup truck, van, and warehouse was more than fifteen hundred pounds.

## CONCLUSION

22.    Based on the foregoing, I submit that there is probable cause to believe that SAUNDRA SANDERS, LEON ROMPREY and RICHARD ADAMS knowingly and intentionally conspired to distribute, and to possess with intent to distribute, marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

Kristin Rosenbeck
Special Agent, Immigration and Customs Enforcement

Sworn to and subscribed before me this 16th day of December 2004.

HON. JOYCE LONDON ALEXANDER
United States Magistrate Judge

7