FILED
Clerk's Office
USDC, Mass.
Date 4-10-07
By MR
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 04-10363-DPW |
| ) | |
| JOHN MANNING, ) | |
| Defendant ) | |

**DEFENDANT JOHN MANNING'S SENTENCING MEMORANDUM**

### I.   INTRODUCTION

The Defendant, John Manning, requests that this Court impose a sentence no greater than the sixty month period of confinement that is required by the mandatory minimum provision of the statute for the crimes to which he pled guilty, based on the following factors: (1) the additional harm to his son Kevin if he is incarcerated for a longer period of time; (2) his health problems, specifically, the fact that he suffers from an enlarged prostate, lung disease, ADHD, panic attacks and sleep apnea; (3) his history and characteristics, including his extremely dysfunctional upbringing which fueled his long standing substance abuse problem, and his efforts towards a successful recovery through the Center for Addictive Behavior program and pretrial services.

### II.   FACTUAL BACKGROUND

**A.   Personal and Family Background**

John Manning was born in Waltham, Massachusetts, the fourth of five children. His father, Leroy Manning worked as a director in the missile division for Raytheon Company. His father died in 2002 after having suffered multiple health problems related

to a lifetime of alcohol abuse, throat cancer and a laryngectomy procedure in 1996. Manning's mother is still living. She was a clock assembler at Waltham Precision Instruments until the company closed in 1979 and then worked in the deli department of a Victory Supermarket until she retired. She currently receives Social Security benefits. Because both his parents were alcoholics, the family was raised in deplorable conditions. Leroy Manning was an extremely violent man who repeatedly beat his wife and children. The defendant witnessed his father break his mother's nose twice, and on another occasion, beat her until she was unconscious. Because there was no telephone in the home, the defendant had to run to a neighbor's for help. The defendant believes that his father also attempted to rape his sister Lynne.

Since both his mother and father were severe alcoholics, bills were rarely paid and there was never any food in the house. The defendant and his siblings often fed themselves by eating garbage from trash cans in the street. Because the heating bill likewise was never paid, the home had no heat or hot water and Manning recalls washing his hair in the sink in freezing cold water during the winter. When he was eleven, a guidance counselor that the defendant had befriended at school walked him home to discuss the living conditions with his parents. After the guidance counselor left, the defendant's father beat him so severely that he missed two weeks of school. Following this incident, the defendant never again confided in any person about his home life.

As a result of these environmental conditions, at age eight the defendant experimented with marijuana and, by age eleven, was a daily user. By twelve the defendant had also began using alcohol, mescaline, speed and THC. At thirteen, he tried cocaine and began using several times per week. He funded his increasing drug habit by

selling newspapers and shining shoes. A priest at the local church recognized his fragile state and attempted to abuse him. A neighbor abused his sister Joanne but because of his father's alcoholism, a prosecution was never commenced.

In 1979, the defendant's mother achieved sobriety and forced his father out of the home. His father resided until his death in a boarding house in Waltham and his children lost contact with him.

In 1981, after his mother moved to Orange Street in Waltham, the defendant moved into an apartment with a girlfriend. They lived together for a few years until 1984 when his girlfriend, who was then pregnant with Manning's child, began a romantic relationship with one of his close friends. The defendant and his girlfriend separated and she terminated the pregnancy. The defendant then lived with an uncle in Waltham, followed by with a family in Newton and then with his brother Roy in Framingham. Shortly thereafter, the defendant resided with a codefendant, William Stanley, in a studio apartment in Woonsocket, Rhode Island for approximately two years before moving in with his sister Lynne in New Hampshire. In 1992, the defendant moved in with a girlfriend, Janet Lopez, who was caring for her elderly mother who suffered from Alzheimer's disease. In 1996, because of his continued drug abuse, the relationship ended and Manning moved out of the home.

Throughout this time period when the defendant lived for shot periods of time in various unstable environments, his use of cocaine accelerated until he became a daily user by his mid-twenties. In 1987, Manning tried crack cocaine and was instantly addicted. His daily use of crack cocaine continued until his arrest in November of 2004. The defendant recalls having suicidal ideations during his crack cocaine use and wished

that his heart would simply explode so that he could rid himself of the grip that the drug had over his life.

On April 10, 1998, the defendant and his fiancée, Allison Carrig, were blessed with the birth of their son, Kevin. At birth, Kevin weighed 3 pounds, 10 ounces and was hospitalized for a significant period of time. Because of his underdeveloped state, Manning had to feed his son with a syringe-style feeding tube. Kevin suffers from an array of physical mental and emotional problems. He has been diagnosed with ADHD and Asperger's, a mild form of autism, and has been prescribed Atenolol, Ritalin and Clonidine. Kevin is under the care of a psychiatrist and is enrolled in the Brackett School in Arlington, which is a noted special needs center.

Despite the hardships caused by Kevin's difficulties, his birth is the single positive event in the defendant's life. Manning is totally committed to his son and is, in every sense of the word, his son's best friend. Manning's greatest fear regarding his legal predicaments is the effect that his absence from the home will have on his son.

After his arrest, the defendant was placed on pretrial supervision. On June 28, 2005, he tested positive for cocaine and amphetamines. The defendant admitted to sporadic use of the drug, and he was referred to an intensive outpatient treatment program with the Center for Addictive Behavior (CAB). After successfully completing the program, Manning voluntarily decided to continue to attend weekly group therapy and AA and NA meetings. For the first time in his life, the defendant has achieved sobriety. Manning is committed to a lifetime of recovery so that he can hopefully provide his son with the nurturing environment that his own life so desperately lacked.

**B.     Offense Conduct.**

The defendant accepts the recitation of facts as it appears in the Presentence Investigative Report ("PSR") prepared by the United States Probation Office on September 5, 206.

### III.  ARGUMENT

**A.     The Sentencing Framework Following United States v. Booker**

As a result of the United States Supreme Court's decision in United States v. Booker, the guidelines sentencing range is advisory. United States v. Booker, 125 S.Ct. 738; 160 L.Ed.2d 621, 651 (2005). Booker gives renewed significance to the Section 3553(a) mandate requiring that the sentence imposed be "sufficient, but not greater than necessary" to comply with the purposes of sentencing -- retribution, deterrence, incarceration and rehabilitation.  18 U.S.C. section 3553(a); United States v. Booker, supra; United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). Moreover, when considering a term of imprisonment, the district court must recognize the statutory admonition that "imprisonment is not an appropriate means of promoting correction and rehabilitation".  18 U.S.C. Section 3582(a).

Following Booker, to determine a sentence that is minimally sufficient to accomplishment the goals of sentencing, the district court first calculates the applicable advisory guidelines range. Then, the court considers the remaining statutory factors and can "tailor" its sentence based on application of those factors to the particular defendant. Booker, 125 S.Ct. at 757; United States v. Jaber, 362 F.Supp. 2d 365, 367 (D.Mass.

2005). Thus, the Booker decision restored some discretion to the district court at sentencing. Factors that could not be considered prior to Booker, can now be considered by the sentencing court. See United States v. Gorsuch, 404 F.3d 543 (1st Cir. 2005) (recognizing that factors that were not relevant under the mandatory sentencing regime are now relevant post-Booker); United States v. Pimental, 367 F.Supp.3d 143, 152 (D.Mass. 2005) (describing the post-Booker sentencing as a "hybrid regime--neither purely discretionary nor mandatory guidelines"); United States v. Jaber, 362 F.Supp. 2d 365, 376 (D. Mass. 2005) ("Booker plainly allows courts to look carefully at [previously discouraged or prohibited] factors and to determine to what degree they are relevant to individual cases"). As one district court wrote, Booker is not "an invitation" to "unmoored decision making, but to the type of careful analysis of the evidence that *should* be considered when depriving a person of his or her liberty." United States v. Myers, 353 F.Supp. 2d 1026 (S.D.Iowa 2005) (emphasis in original).

The statutory factors that must be considered at sentencing are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the relationship between the sentence and the seriousness of the offense; (4) the need for the sentence to deter adequately criminal conduct; (5) the need for the sentence to protect the public from further crimes of this defendant; (6) the need to provide the defendant with proper education, vocational training, medical care and other treatment in the most effective manner; (7) the kinds of sentences available; (8) the advisory guideline range; (9) relevant policy statements in the Sentencing Guidelines; (10) the need to avoid

unwarranted sentencing disparities; and (11) restitution to the victim. 18 U.S.C. §3553(a)[1]; United States v. Booker, supra.

Thus, following Booker, the guidelines calculation is just one of many factors to be considered by the court when deciding a defendant's sentence. The First Circuit has not decided what weight the sentencing court should give to the advisory guidelines range, as compared to the other statutory factors. At least one district court within the First Circuit has held that the analysis of the statutory factors should be permitted to evolve and that one factor (i.e. the guidelines range) should not be given more weight than the others. United States v. Jaber, 362 F.Supp.2d at 367. (recognizing that giving "heavy" weight to the advisory guideline calculation "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker").

---

[1] § Section 3553(a) provides as follows:

"Factors to be considered in imposing a sentence. -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for--(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--(i)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and (ii) that, except as provided in section 3742(g) are in effect on the date the defendant is sentenced; or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); (5) any pertinent policy statement--(A) issued by the Sentencing Commission pursuant to § 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission under § 994(p)of title (28); and (3) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of any offence."

After considering the § 3553(a) factors, the sentencing court then must decide whether to sentence the defendant within the advisory guidelines range or determine if a non-guidelines sentence, i.e., one that is below the advisory guidelines range, should be given. The following section reviews the §3553(a) factors to establish that sentencing Manning at the bottom of the advisory guideline range is reasonable.

**B.  Determining The Sentence --- The 3553(a) Factors**

 **1.  The Nature and Circumstances of the Offense**

Manning pled guilty to counts One and Two of the Indictment, charging him with conspiracy to distribute marijuana and possession of marijuana with intent to distribute. These charges arose out of an undercover investigation by the Department of Homeland Security and the Bureau of Immigration and Customs Enforcement, where those agencies participated in the controlled delivery of a tractor-trailer loaded with marijuana to a warehouse in Billerica. Manning's role in the offense was minimal. He participated in unloading the boxes containing marijuana from the tractor trailer, removed the marijuana from those boxes and placed it inside toolboxes for transportation to another destination. Manning was viewed as unreliable by his codefendants due in large measure to his substance abuse problems. Manning is, essentially, the stereotypical mule.

 **2.  The History and Characteristics of the Defendant**

Manning's personal background is set out in the sections above. Based on those facts, the following issues are relevant to sentencing.

### (a) Personal History and Family Circumstances

Manning's young son relies on him for financial and emotional support. During his pretrial release, he had obtained employment as a heavy equipment operator through Longshore Union #1908 and worked at a scrap metal yard in Everett. Manning and his fiancée rent a home in East Arlington so Kevin can attend the Brackett School and take advantage of their special needs program. His recent incarceration has created such a financial burden that the family may have to move and take Kevin out of the school. Kevin has been ostracized by classmates because of his aggressive demeanor. Outside of his relationship with his father, he has no social life. Each day after work, Manning would rush home to spend time with Kevin. Their relationship is the type of loving, nurturing, and caring connection that has evaded Manning for much of his life. The defendant simply wants to provide a better life for his son than his father provided to him.

### 3. The Need for the Sentence to Deter Others

The court can impose a sentence that is sufficient to deter others, and that avoids the additional devastating harm to Manning's son, considers his health and his efforts towards his recovery from substance abuse.

### 4. The Need to Protect the Public From This Defendant's Future Criminal Activity

There is nothing in Manning's history that indicates that he will be a danger to the public or engage in criminal conduct in the future.

### 5. The Kinds of Sentences Available

Although an appropriate sentence for this particular defendant under these particular facts might include a combination of a relatively short period of confinement followed by intensive drug treatment, aftercare, and supervision, the statutory construction has deprived this Court of any discretion and requires that a five year minimum mandatory sentence be imposed.

### 6. The Guideline Range

The appropriate advisory guideline range is 60 to 71 months.

### 7. The Need to Avoid Sentencing Disparity

The drafters of the Guidelines recognized that different sentences based upon "differences among offenses or offenders" were justified. See United States v. Jaber, 362 F.Supp. 2d 365, 367 (D. Mass. 2005) citing the Sentencing Reform Act, S.Rep. No. 98-225 at 38 (1984) reprinted in 1984 U.S.C.C.A.N.3183, 3221-29. Here, however, the court has no discretion to impose a sentence below the minimum mandatory.

## IV. PROPOSED STATEMENT OF REASONS PURSUANT TO 18 U.S.C. SECTION 3553(c)

A sentence at the bottom of the advisory guideline range is reasonable and is supported by:

(A) the nature and circumstances of the offense;

- 11 -

(B) the history and characteristics of the defendant including the extraordinary collateral consequences to his son Kevin if he is incarcerated beyond sixty months; his health issues and his efforts toward recovery from substance abuse.

## V. CONCLUSION

For the reasons set forth above, Manning requests that this Court grant his request for a sentence at the bottom of the advisory guideline range, imposing a sentence of sixty months confinement, and further requests this Court make a recommendation to the Bureau of Prisons that the defendant participate in the 500 hour drug program and a recommendation for designation tot Fort Devens.

Respectfully Submitted,
By Defendant's Attorney,

Timothy R. Flaherty
Flaherty Law Offices
43 Bowdoin Street
Boston, MA 02114
(617) 227-1800
BBO No.557477

### CERTIFICATE OF SERVICE

I, Timothy R. Flaherty, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.